IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACY E. MEAGHER, | ) | CASE NO. 3:20-CV-02502-JRK |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | JUDGE JAMES R. KNEPP, II UNITED STATES DISTRICT JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| Defendant. | ) ) ) ) | **REPORT & RECOMMENDATION** |

Plaintiff, Tracy Meagher ("Plaintiff" or "Meagher"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In January 2019, Meagher filed an application for SSI, alleging a disability onset date of June 20, 2018[2] and claiming she was disabled due to: anxiety; depression; somatic symptom disorder; spinal stenosis; scoliosis; spinal arthritis; degenerative disc disease; four bulging discs; arthritis of the knees and

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.
[2] Meagher amended her alleged onset date at the hearing. (Tr. 10.) However, under 20 C.F.R. § 416.335, SSI benefits are payable as of the month following the month of application. Therefore, the period at issue begins on January 8, 2019, the date of application, regardless of the alleged onset date.

1

hands; fibromyalgia; sciatic nerve pain; osteoarthritis in joints throughout the body; racing heart; gout; and high cholesterol. (Transcript ("Tr.") 10, 92-93, 110.) The application was denied initially and upon reconsideration, and Meagher requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 10.)

On February 18, 2020, an ALJ held a hearing, during which Meagher, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On February 28, 2020, the ALJ issued a written decision finding Meagher was not disabled. (*Id.* at 10-20.) The ALJ's decision became final on September 8, 2020, when the Appeals Council declined further review. (*Id.* at 1-6.)

On November 5, 2020, Meagher filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14-16.) Meagher asserts the following assignment of error:

> (1) The ALJ failed to consider whether Ms. Meagher's assistive device was medically necessary. The ALJ's failure to consider Ms. Meagher's assistive device or include it in the residual functional capacity constitutes reversible error as the assistive device is determinative of whether Ms. Meagher is disabled.

(Doc. No. 14 at 2.)

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Meagher was born in December 1970 and was 49 years-old at the time of her administrative hearing (Tr. 10, 19), making her a "younger" person under Social Security regulations. *See* 20 C.F.R. § 416.963(c). She has at least a high school education and is able to communicate in English. (Tr. 19.) She has no past relevant work. (*Id.*).

**B.     Medical Evidence[3]**

On June 21, 2018, Meagher saw Obie Ramsay, M.D., for complaints including fibromyalgia, hypertension, and osteoarthritis. (*Id.* at 410.) Dr. Ramsay suggested a neoprene brace "for additional support and warmth" could be helpful for Meagher's knee. (*Id.*) Occasional anti-inflammatories could also help, but Dr. Ramsay cautioned they should be used sparingly. (*Id.* at 410-11.) Dr. Ramsay further recommended weight loss, daily knee exercises, and proper cushioned tennis shoes. (*Id.* at 410.) Meagher denied dizziness, numbness, tingling, and weakness. (*Id.* at 412.)

On July 19, 2018, Meagher underwent a functional capacity evaluation with David Reed, PT, DPT, MS, MBA. (*Id.* at 586-87.) Dr. Reed opined Meagher could occasionally lift 10 pounds from her waist level and push and pull 10 pounds. (*Id.* at 586.) Meagher could occasionally lift five pounds to her shoulder and overhead. (*Id.*) Dr. Reed further opined Meagher could constantly sit, occasionally stand, rarely walk, and never kneel. (*Id.*) Meagher would need to change positions at will. (*Id.*) Meagher could never squat, crawl, or climb stairs and ladders. (*Id.*) Dr. Reed further opined Meagher could occasionally reach out, bend, and use her hands, but could rarely reach upwards. (*Id.*) Dr. Reed recommended no repetitive activities/tasks. (*Id.* at 587.)

On September 10, 2018, Meagher saw Danielle Breece, PA-C, for right knee pain. (*Id.* at 369.) Meagher complained of issues that began while walking through Meijer a week before. (*Id.*) Meagher complained of moderate pain along the anteromedial and lateral aspect of her right knee, as well as some locking, catching, popping, and grinding sensations. (*Id.*) Meagher also reported decreased motion and strength in her right knee as compared to her left. (*Id.*) While Meagher noticed some swelling of her right knee, she denied numbness and tingling in her right foot. (*Id.*) On examination, Breece found an antalgic

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. Further, since Meagher challenges only the ALJ's physical findings, the Court's discussion of the evidence is further limited to Meagher's physical impairments.

gait favoring the right leg, as well as mild swelling, mild effusion, positive medial and joint line tenderness, positive patellofemoral ballottement and grind test, reduced range of motion, crepitus throughout a range of motion, good stability, positive McMurray test, 4/5 motor muscle strength (as opposed to 5/5 on the left), and intact sensation in the foot. (*Id.* at 369-70.) X-rays revealed osteoarthritic changes, joint space narrowing, and spurring formation. (*Id.* at 370.) Breece diagnosed Meagher with osteoarthritis of the right knee and a right knee sprain. (*Id.*) Breece directed Meagher to continue cryotherapy, physician directed physical therapy, activity modification, and taking Tylenol for the pain as needed. (*Id.*) Meagher declined an MRI and asked for a brace when walking around. (*Id.*) Breece noted Meagher understood she may require MRIs or injections to her knees. (*Id.*)

On October 15, 2018, Meagher saw Trisha Kleman, C.N.P., for complaints of lower back pain that radiated into her legs. (*Id.* at 401.) Meagher reported the pain had worsened over the past three weeks. (*Id.*) Meagher rated her pain as an 8/10 and told Kleman most of her pain was in her left buttock. (*Id.*) Lying on her back decreased the pain, while walking, standing, and changing positions aggravated the pain. (*Id.*) While Meagher had been doing water therapy for her knee, it had not helped her back pain. (*Id.*) An MRI of the lumbar spine revealed multilevel loss of disc height at the L3-L4 and L5-S1 levels, similar changes (although to a lesser degree) at level L4-L5, stenosis of L3-L4 through the foramina bilaterally, stenosis at L5/S1 bilaterally, and recess stenosis across L4-L5 and L5-S1. (*Id.*) On examination, Kleman found mild tenderness along the lumbar vertebra, decreased range of motion of the back, tenderness to the left buttock, full and equal leg strength, and normal extremities. (*Id.* at 401-02.) Kleman diagnosed Meagher with lumbago with sciatica bilaterally. (*Id.* at 402.)

On January 17, 2019, Meagher went to the emergency room with complaints of being dizzy and off-balance. (*Id.* at 444.) Meagher rated her symptoms as mild. (*Id.*) She reported a history of vertigo and her current feelings of dizziness and being off-balance were similar to those before an episode of

vertigo. (*Id.*) Meagher stated her symptoms had begun twenty minutes before and she had only taken aspirin. (*Id.*) Meagher denied nausea and vomiting. (*Id.*) On examination, treatment provides found full range of motion, intact neurovascular system, and non-pitting edema of the lower extremities. (*Id.* at 446.) Treatment providers diagnosed Meagher with vertigo and sinusitis. (*Id.* at 447.)

On March 24, 2019, Meagher went to the emergency room with complaints of right ear pain. (*Id.* at 570.) Meagher also reported ear fullness and pressure, ringing of her ears, dizziness, cough, and sore throat. (*Id.*) Meagher stated her medication relieved her dizziness and she had plenty at home. (*Id.*) She also had an ENT appointment in three days. (*Id.*) On examination, treatment providers found full range of motion, no edema, intact neurovascular system, and normal ear exam. (*Id.* at 572.) Treatment providers diagnosed Meagher with vertigo. (*Id.*)

On April 11, 2019, Meagher saw Jered Hill, PA-C, for complaints of bilateral knee pain. (*Id.* at 648.) Meagher reported mild to moderate pain in her knees, as well as decreased range of motion and strength, grinding, and some popping and catching. (*Id.*) Meagher reported most of her pain at this point was sciatic pain and her knee pain was not unbearable. (*Id.*) Meagher declined to pursue anything regarding her knees after discussing injections. (*Id.*) On examination, Hill found minimal swelling, minimal effusion, positive patellofemoral ballottement and grind test, decreased range of motion bilaterally, 4/5 strength bilaterally, negative McMurray test bilaterally, and feet sensation intact. (*Id.*) Meagher's diagnoses consisted of primary osteoarthritis of the knees and bilateral sciatica. (*Id.*)

On May 7, 2019, Meagher saw Alec Curry, PA-C, for complaints of lumbar pain. (*Id.* at 646.) Curry noted Meagher had "previously voiced in the past a strong opposition to any invasive treatment including injections and steroids." (*Id.*) Meagher reported her low back, buttock, and shin pain continued to worsen, and she was having difficulty with the activating and firing of the gluteus muscles. (*Id.*) Meagher also complained of a sensation of sitting on a ball on the right side. (*Id.*) Meagher reported

5

numbness and tingling in her right foot to her knee, as well as a change in her gait to a shorter stride with more shuffling. (*Id.*) On examination, Curry found 5/5 strength and intact sensation to light touch. (*Id.*) Curry diagnosed Meagher with lumbosacral stenosis, lumbosacral intervertebral disc degeneration, lumbar scoliosis, burning sensation, numbness, and paresthesia. (*Id.* at 647.) Curry noted Meagher declined further imaging, injections, or surgical care and that Meagher reported good relief and improvement with the use of a TENS unit. (*Id.*) Curry wrote Meagher a prescription for her own TENS unit. (*Id.*) Curry noted further:

> Additionally, we did discuss her worsening gait, which has now been going on for about one month. I discussed with her the symptoms of possible cervical myelopathy and at this point she does not have any upper extremity symptoms, pain, tingling, loss of strength, or loss of coordination. She has had symptoms of vertigo, however. I did discuss with her that if she feels that this worsening she may benefit from further workup and evaluation with a neurologist. . . .

(*Id.*)

On July 18, 2019, Meagher saw Gerald Riess, M.D., for complaints of problems with walking and balance issues. (*Id.* at 1288.) Meagher reported she could not carry things and walk into the house, as she may go backwards or fall to the side. (*Id.*) She told Dr. Riess her symptoms began a few years ago but had gotten worse over the past year. (*Id.*) Meagher stated when walking she stumbles to the right or she feels like she is going to fall backward. (*Id.*) Meagher also complained of right leg pain and weakness, as well as a foot deformity and right knee pain. (*Id.*) On examination, Dr. Riess found normal extremities, normal muscle bulk, tone, and power, normal coordination, and a wide-based and arthritic gait with moderate ataxia and veering to the right side. (*Id.* at 1289.) Dr. Riess noted:

> The patient's gait difficulty could be due to a variety of etiologies. A combination of foot deformity, knee problems, and mild lumbosacral radiculopathy could explain her symptoms however the tendency to retropulsion is unusual. Due to the patient's age multiple sclerosis should be rules out with an MRI scan of the brain. I will see her back afterwards for further evaluation.

6

(*Id.* at 1288.)

On August 30, 2019, Meagher saw Nasim Mastouri, M.D., for her hypertension. (*Id.* at 2135.) Dr. Mastouri noted Meagher used a cane, which helped. (*Id.* at 2137.) Meagher denied weakness, numbness, and tingling. (*Id.* at 2138.) On examination, Dr. Mastouri found no atrophy or abnormal movements as well as 1+ pitting edema. (*Id.*)

On October 21, 2019, Meagher saw Dr. Riess for follow up from physical therapy, which Meagher reported was very difficult because of her back and knee pain from standing. (*Id.* at 2121.) Meagher reported continuing to feel off-balance most of the time, as well as continued episodes of vertigo and tinnitus. (*Id.*) Dr. Riess stated:

> The patient's symptoms of ataxia and intermittent vertigo are likely multifactorial. There is significant components of her long-standing back pain, knee pain, and obesity. Conceivably Mnire's [sic] disease could be a contributing factor and would not of [sic] been detected on the video nystagmogram. After much discussion it was decided to refer the patient to the vestibulopathy clinic at OSU for evaluation. I will see her back again afterwards.

(*Id.*) A physical examination was deferred, although Dr. Riess noted Meagher had a wide-based and ataxic gait with a limp. (*Id.* at 2122.)

On February 19, 2020, Dr. Riess prescribed Meagher a cane. (*Id.* at 2363.) Dr. Riess listed Meagher's diagnosis as Meniere's disease. (*Id.*)

**C.     State Agency Reports**

On February 22, 2019, Diane Manos, M.D., opined Meagher could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for two hours, and sit for about six hours in an eight-hour workday. (*Id.* at 102-04.) Meagher's ability to push and/or pull was unlimited, other than shown for lift and/or carry. (*Id.* at 103.) Meagher could occasionally climb ramps/stairs, balance, stoop, kneel, and crouch. (*Id.*) She could never climb ladders, ropes, or scaffolds, and she could

never crawl. (*Id.*) Meagher must avoid concentrated exposure to vibration and all exposure to hazards. (*Id.* at 104.)

On April 2, 2019, on reconsideration, Yeshwanth Bekal, M.D., affirmed Dr. Manos' findings. (*Id.* at 118-19.)

**D.      Hearing Testimony**

During the February 18, 2020 hearing, Meagher testified to the following:

- She lives with her parents. (*Id.* at 40-41.) She has a driver's license and drives, although she does not leave the house every week and only leaves if she has to do something. (*Id.* at 41-42.) The last time she drove she went to the pharmacy. (*Id.* at 42.)

- She last worked in 1999 or 2000. (*Id.* at 43.)

- She experiences pain in her knees, back, legs, and feet. (*Id.*) The pain is stabbing, and she also has numbness and tingling. (*Id.*) Her pain is a 5-6/10, and nothing ever alleviates it. (*Id.* at 43-44.) Pain medication does not work for her and she had to stop taking anti-inflammatories because of stomach ulcers. (*Id.* at 44.) She takes a lot of aspirin. (*Id.*) She has undergone four years of physical therapy. (*Id.*)

- She does not have a problem walking with her cane. (*Id.* at 45.) She can walk about 20 feet with her cane. (*Id.*) She got the cane on her own. (*Id.*) She never asked her doctor for one because she thought it would go away. (*Id.*) She thought she was probably going to have to ask for one to be prescribed because she had her current one for a while. (*Id.* at 46.) She cannot walk and hold things at the same time. (*Id.*) She could not do that even before she started using the cane. (*Id.*) Even with her cane she is "kind of wobbly" and unstable on her feet when it is wet or icy outside. (*Id.* at 47.)

- Her medications make her tired and cause stomach upset. (*Id.* at 48.) Some of her medications she has been on for so long she does not know if they affect her anymore. (*Id.*) She only gets five hours of sleep a night because it is difficult to sleep. (*Id.*) She can only sleep on her back because sleeping on her sides make her dizziness and vertigo worse. (*Id.*) She naps during the day at least three times a week. (*Id.* at 49.)

- She can bathe or shower by herself, although it takes her about an hour. (*Id.*) She can put dishes in the sink, and she can load the dishwasher. (*Id.* at 49-50.) She can put away clothes, but she does not do laundry because she would get wobbly and off-balance from the standing up and down and getting clothes out of the dryer. (*Id.* at 50.) She gets wobbly and off-balance after about five minutes. (*Id.*) She can vacuum small areas. (*Id.*) She goes grocery shopping, making several small trips. (*Id.* at 51.) She cannot do everything in one day. (*Id.*) If she goes to the store, she comes home and cannot do a lot of things around the house because she is off-balance. (*Id.*)

- She cannot sit for long periods of times because her feet swell, and she needs to elevate them. (*Id.* at 52.) She elevates her legs every day. (*Id.*) She elevates her legs for a few hours every day because they hurt. (*Id.* at 53.)

- She gets headaches three times a month. (*Id.*) Stress, anxiety, scrolling on the tablet, bright lights, wind, turning her head too much, and having her head down too much will cause her to have headaches. (*Id.*)

The ALJ found Meagher had no past relevant work. (*Id.* at 56.) The ALJ then posed the following hypothetical question:

> So for my first hypothetical, please consider an individual with the Claimant's age, education, and work experience. The individual can perform at the sedentary level of exertion with the following limitations. Occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, frequently handle, finger, and feel with the bilateral upper extremities, occasionally exercise foot controls with the bilateral lower extremities, never be exposed to hazards such as moving machinery or unprotected heights, and never drive commercially. The Claimant can perform simple, routine – or the hypothetical Claimant can perform simple, routine, and repetitive tasks, but not at a production rate pace. So for example no assembly line work. Are there any jobs such an individual could do?

(*Id.*)

The VE testified the hypothetical individual would be able to perform representative jobs in the economy, such as food order clerk, wire insulator, and hand mounter. (*Id.*)

Meagher's counsel asked the VE whether needing a cane for balance and ambulation would affect the VE's answers. (*Id.* at 57.) The VE testified:

> Okay. I think that most of these entry level, unskilled jobs would require some unassisted standing a day. When I say some I'm thinking you know even up to an hour. So I think that adding that in particular to these entry level, unskilled, sedentary jobs would rule them out. There would be none.

(*Id.* at 58.)

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. § 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 8, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity; lumbar degenerative disc disease; fibromyalgia; gout; left knee osteoarthritis; right knee osteoarthritis, status-post remote arthroscopy and meniscectomy; bilateral hand osteoarthritis; arthrosis and hallux valgus deformity with bunion of the bilateral feet with a small calcaneal spur; depression; and anxiety (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel with the bilateral upper extremities; and, [sic] occasionally operate foot controls with the bilateral lower extremities. She can never be exposed to hazards such as uneven terrain, moving machinery, or unprotected heights; and, [sic] never drive commercially. She can perform simple, routine, and repetitive tasks, but not at a production rate pace (so, for example, no assembly line work).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on December **, 1970 and was 48 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 8, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-20.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

11

Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In her sole assignment of error, Meagher argues that while the ALJ "acknowledged" that she used a cane and that she was prescribed an assistive device, the ALJ failed to include an assistive device in the RFC and failed to explain why the assistive device was not medically necessary. (Doc. No. 14 at 7.) Meagher points to her February 2020 cane prescription, issued the day after she used a cane at her administrative hearing, medical records documenting Meagher's complaints regarding dizziness and feeling off-balance, as well as knee and back pain, and her July 2019 visit with Dr. Riess where Meagher complained of problems with walking and balance. (*Id.* at 7-8.) Meagher argues this error is not harmless, because the VE testified that the use of an assistive device would preclude competitive employment. (*Id.* at 9.)

The Commissioner responds that under SSR 96-9p, as Meagher admits, there must be medical documentation describing the circumstances for which an assistive device is needed. (Doc. No. 15 at 3.) Here, the Commissioner asserts, none of the evidence Meagher identifies describes the circumstances for which a cane is needed, and therefore the ALJ "was not allowed to find the cane medically necessary." (*Id.*) The Commissioner argues that since Meagher failed to show a cane was medically necessary, the ALJ was not required to explain that the cane was unnecessary; for the Court to find otherwise would shift the burden from the claimant to the ALJ. (*Id.*)

Meagher counters the Commissioner's arguments in her reply by stating that SSR 96-9p requires the ALJ to "'always consider the particular facts of a case,'" and here Meagher's "treating source provided medical documentation establishing the need for a hand-held assistive device by issuing a prescription for a cane." (Doc. No. 16 at 3.) In addition, Meagher argues that the record as a whole "documents issues with balance and difficulty ambulating," which she claims "documents the circumstances for which the device is needed, *i.e.*, ambulating and maintaining balance." (*Id.*) Therefore, Meagher asserts there is record evidence establishing the medical necessity for a cane, and the Commissioner's argument to the contrary is nothing more than impermissible *post-hoc* rationalization. (*Id.*)

SSR 96-9p states, in relevant part:

> *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) (emphasis added).  Interpreting this ruling, the Sixth Circuit has explained that where a cane "was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work."  *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002).  The Sixth Circuit has not directly ruled on this issue but other courts in this district have noted that, in cases involving assistive devices including a cane, documentation "describing the circumstances for which [the assistive device] is needed" is critical to establishing that it qualifies as a "necessary device" under SSR 96-9p.  *McGill v. Comm'r of Soc. Sec. Admin.*, No. 5:18 CV 1636, 2019 WL 4346275, at *10 (N.D. Ohio Sept. 12, 2019), citing *Carreon v. Massanari*, 51 F. App'x at 575; *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (noting that a finding of medical necessity of an assistive device requires a statement of the circumstances in which it is needed and that other circuits "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (prescription for a cane from the Veteran's Administration insufficient to show medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (prescription and references that claimant used a cane insufficient to show medical necessity).

While Meagher objects to the fact the ALJ only mentioned her cane twice in the decision, the ALJ's brief mention of the cane is consistent with the medical evidence.  The bulk of Meagher's medical records do not document a need for a cane.  None of the records cited by Meagher state that a cane is medically necessary, let alone set forth the circumstances in which it is necessary, as SSR 96-9p requires.[4]

---

[4] In a September 2019 visit with Shelley Fogt, APRN-CNP, treatment records reflect that on examination, Meagher had a "normal gait w/ stick cane for security with balance, normal strength, no atrophy or abnormal movements noted." (Tr. 2132-33.)  Meagher did not direct the Court to this medical record and makes no argument that this treatment note satisfies the requirements of SSR 96-9p.  (Doc. No. 14.)  The Court shall not make such an argument for her.  Furthermore, in light of the case law discussed herein, the

Even the July 2019 treatment notes from Dr. Riess do not provide the necessary documentation; while he noted a wide-based and arthritic gait with moderate ataxia and veering to the right side, Meagher was not noted to be using a cane, he did not state she required a cane, and he did not explain the circumstances for which she needed to use a cane. (Tr. 1288-89.) Dr. Riess did not prescribe a cane until February 19, 2020 (the day after the hearing), and the prescription makes no mention of the circumstances for which the cane is required. (*Id.* at 2363.)

In similar situations, multiple courts throughout this Circuit upheld ALJ decisions that did not include the need for a cane in a claimant's RFC. *See, e.g., Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("Moreover, as [the doctor's] confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfil the requirements under SSR 96-9p."); *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, at *6 (S.D. Ohio March 13, 2019) (finding ALJ did not err in not including a limitation for a cane where physician indicated claimant would need a cane but did not describe the specific circumstances for which a cane is needed as required by SSR 96-9p); *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but neither the prescription or treatment records "indicate[d] the circumstances in which [the claimant] might require the use of a cane."); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (rejecting claimant's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the physician's "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work") (citations omitted); *Halama v. Comm'r of Soc. Sec.*, Case

---

Court finds this notation in this medical record insufficient to show medical necessity for a cane, as well as the circumstances for which a cane was required.

No. 1:12 CV 1859, 2013 WL 4784966, at *8 (N.D. Ohio Sept. 5, 2013) ("Here, even Halama does not contend that the record contains the "unambiguous" statement of a physician containing the circumstances under which it would be medically necessary for him to use a cane. Inasmuch as there is no such statement in the record, I find that the decision of the ALJ in this case not to incorporate the use of a cane into the RFC is supported by substantial evidence."); *Strain v. Comm'r of Soc. Sec. Admin.*, Case No. 5:12-CV-1368, 2013 WL 3947160, at *3 (N.D. Ohio Aug. 1, 2013) ("Although Strain can demonstrate that she uses or has used a cane, she does not provide evidence that she *required* use of the cane. She is unable to point to any clinical evidence that *unmistakably* says that she *must* use a cane. At this point in the inquiry, with its deferential standard of review, she must do so in order to upset the decision of the ALJ.") (emphasis added).

Meagher argues the ALJ erred in making no finding that the cane was not medically necessary. (Doc. No. 14 at 7.) However, the ALJ did make a finding the cane was not necessary, as it was not listed as a limitation in the RFC. Furthermore, the burden is always upon a claimant to present evidence of her disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

In sum, while there may be evidence supporting Meagher's use of a cane, substantial evidence also supports the ALJ's RFC determination and its compliance with SSR 96-9p. An ALJ decision cannot be reversed merely because there exists some other evidence in the record that might support a different conclusion. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence

to support a different conclusion ... This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted).

Accordingly, and for all the reasons set forth above, Meagher's assignment of error is without merit and does not provide a basis for remand.

### VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: November 30, 2021

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).